[L.A. No. 31599. Mar. 28, 1983.]

SECREST MACHINE CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RUBEN RAMOS, Real Party in Interest.

---

**COUNSEL**

James R. Birmingham, Harold Q. Longenecker, Toni Rae Bruno, David Gorney and Chase, Rotchford, Drukker & Bogust for Petitioner.

No appearance for Respondent.

Benjamin F. Card, Dimino & Card and James R. Goff for Real Party in Interest.

---

**OPINION**

**REYNOSO, J.**—We must decide whether California may constitutionally assert jurisdiction over a nonresident corporation on the basis of activities sur-

rounding the sale of its product for use in California. The assertion is for the limited purpose of adjudicating a claim that a defect in the design or manufacture of the product caused an injury to a California resident.

Real party in interest Ruben Ramos is the plaintiff in an action to recover damages for the loss of five of his fingers which occurred while he operated a leveling machine[1] at his place of employment in Signal Hill, California. The machine was designed and manufactured by petitioner Secrest Machine Corporation (Secrest). Secrest is not a California corporation and the machine was manufactured outside of this state. Ramos seeks to bring Secrest within the jurisdiction of California courts for purposes of this product liability action because Secrest purposefully sold the machine to his employer, F & S Metals, Inc., a California corporation (F&S), for use in its Signal Hill, California steel plant. Secrest has entered a special appearance and moved to quash service of the summons and complaint for lack of in personam jurisdiction. The trial court found sufficient contacts to give California jurisdiction and denied the motion.

We conclude that the trial court properly may exercise jurisdiction over Secrest for the limited purpose of this lawsuit under section 410.10 of the Code of Civil Procedure and principles set forth in *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]; *Buckeye Boiler* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264]; and *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322].

Secrest is a corporation organized under the laws of the State of Delaware. It maintains its principal place of business in Alexandria, Virginia. Secrest does not regularly maintain any offices, or have any agents, representatives, employees or property in California. The corporation has never applied for authorization to do business in California.

In March 1977, Kenneth Staub, an employee of F&S, traveled to Secrest's Alexandria offices to negotiate the purchase of a leveling machine. Prior to his trip east Staub had viewed two or three leveling machines manufactured by Secrest in operation at the North Atlantic Steel Company in Alameda, California.

Franklin Dees, president of F&S, had heard of Secrest by word-of-mouth and knew it to be one of three or four companies in the United States which manufacture machines of the type needed for F&S's business. After Staub returned to California Dees engaged in correspondence and telephone com-

---

[1]Variously referred to as a "leveling" or a "decoiling and cut to length line" machine, the apparatus apparently is designed to cut sheets of steel to a desired length.

munications with Secrest. During the course of these communications an agreement as to product and price was reached. Dees then prepared, signed and mailed to Secrest an order for the purchase of a type of leveling machine included in Secrest's standard stock, at a price of $115,116.

F&S took delivery of the machine in Virginia. According to Dees, however, there was an oral agreement that his acceptance of the merchandise was conditioned on satisfactory performance in the California plant. Secrest sent an employee to Signal Hill who spent two days assisting F&S in installation of the machine. On September 13, 1977, after the machine was installed and performing to Dees' satisfaction, he signed a security agreement setting forth the financial arrangements between F&S and Secrest. Financing had been arranged through a Maryland corporation which is shown on the Uniform Commercial Code financing statement as the assignee of the secured party, Secrest. Although the contract did not include a maintenance agreement F&S consults Secrest about proper maintenance of the machine and occasionally orders spare parts from Secrest. When considering adapting the leveling machine to accommodate a "slitter" (a device which trims the metal sheets to a specified width) manufactured by another company, F&S asked for and received from Secrest drawings of possible adaptations. Secrest twice sent to F&S circulars advertising special sale prices of certain of its products. Additional evidence submitted by the plaintiff showed that Secrest on six occasions in 1981 placed advertisements in Iron Age, a national trade publication which is distributed in California.

A California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. (Code Civ. Proc., § 410.10.) The parameters of the states' constitutional powers to compel absent defendants to defend suits brought in state courts has been defined in a series of United States Supreme Court decisions of which *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057] is the seminal case. ■ Generally, the rule is that the forum state may exercise jurisdiction over a nonresident defendant only where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co., supra*, 326 U.S. at p. 316 [90 L.Ed. at p. 102].) "In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on 'the relationship among the defendant, the forum and the litigation.' *Shaffer* v. *Heitner* [(1977) 433 U.S. 186 (53 L.Ed.2d 683, 97 S.Ct. 2569)] at 204." (*Rush* v. *Savchuk* (1980) 444 U.S. 320, 327 [62 L.Ed.2d 516, 524, 100 S.Ct. 571].)

■ The high court has said that "the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not,

cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (*Internat. Shoe Co., supra,* 326 U.S. at p. 319 [90 L.Ed.2d at pp. 103-104].) Thus, where a corporation's activities have been extensive or wide ranging, or substantial, continuous and systematic, they justify jurisdiction for all causes of action asserted against the corporation. (See, *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264]; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]; *Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437, 447-448 [96 L.Ed. 485, 493-494, 72 S.Ct. 413].)

Less extensive activity may support jurisdiction for purposes of a particular cause of action depending upon the nature and quality of the acts, the degree of relation to the asserted cause of action, and the balance between the convenience of the parties and the interest of the state in asserting jurisdiction. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 143, 148; *Hess* v. *Pawloski* (1927) 274 U.S. 352 [71 L.Ed. 1091, 47 S.Ct. 632]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199]; *Hanson* v. *Denckla* (1958) 357 U.S. 235, 250-253 [2 L.Ed.2d 1283, 1295-1297, 78 S.Ct. 1228].) ■ California has recognized that a state may exercise jurisdiction over one who causes effects in the state by an act or omission done elsewhere with respect to causes of action arising from the effects. This is so unless the nature of the effects and of the individual's relationship to the state make exercise of jurisdiction unreasonable. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322]; *Quattrone* v. *Superior Ct.* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548]; see, Judicial Council com. to Code Civ. Proc., § 410.10, 14 West's Ann. Cal. Code; Rest.2d Conf. of Laws, § 37.)

■ In cases where jurisdiction is based on the defendant's occasional activities the United States Supreme Court has said that ". . . it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Hanson* v. *Denckla, supra,* 357 U.S. at p. 253 [2 L.Ed.2d at p. 1298].) With regard to corporate manufacturers of allegedly defective products this court has "equated engaging in economic activity within this state 'as a matter of commercial actuality' with *Hanson*'s requirement of purposeful activity within the state." (*Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d at p. 902.) In *Buckeye Boiler* we explained that "whenever the purchase or use of its product within the state generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about this result" the manufacturer has engaged in economic activity within the state as a matter of commercial actuality. (*Id.,* at p. 902; see also, *Gray* v. *American*

*Radiator & Standard Sanitary Corp.* (1961) 22 Ill.2d 432 [176 N.E.2d 761, 766].) ■ We said that jurisdiction based on an isolated use or purchase would be precluded only if the isolated nature of the use "conclusively establishes lack of foreseeability that the product will enter the state . . . ." (*Buckeye Boiler, supra,* at p. 904.)

The United States Supreme Court recently emphasized that foreseeability that a manufacturer's product would enter or cause injury in the forum state is not itself a sufficient basis for the assertion of jurisdiction over the manufacturer. "Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." The court found it unreasonable to assert jurisdiction where "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant. . .'" was the sole asserted contact with the forum. (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 297-298 [62 L.Ed.2d 490, 501-502, 100 S.Ct. 559].)

In *World-Wide Volkswagen,* the plaintiffs had purchased an Audi automobile from a New York retailer while they were themselves residents of New York. They were injured in an accident which occurred as they were driving through Oklahoma en route to their new home in Arizona. They filed a products liability suit in the District Court for Creek County, Oklahoma, naming the manufacturer, importer, regional distributor and New York retail dealer as defendants. The high court sustained challenges to Oklahoma's assertion of jurisdiction over the eastern regional distributor and the New York retailer, finding a lack of contacts, ties or relations between those defendants and the State of Oklahoma. Neither defendant did any business in Oklahoma, shipped or sold any products to or in that state, had an agent to receive process there, or purchased advertisements in any media calculated to reach Oklahoma. (*Id.,* at pp. 289-299 [62 L.Ed.2d at pp. 496-502].)

■ The cause of action before us now, unlike that involved in *World-Wide Volkswagen,* arises out of a direct sale of a product by its Virginia manufacturer to a California business for use in California. Thus, the issues are whether the series of acts surrounding that sale are of a nature and quality sufficient to sustain jurisdiction and whether the convenience of the parties and the interest of California in providing a forum favor adjudication in a California court. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143.)

Secrest engaged in a number of acts in connection with the sale of the leveling machine to F&S. Some of these acts, such as the initial negotiations, took place

outside of California. Others, such as sending an employee to assist F&S with installation of the machine, involved the physical presence of a Secrest employee in California. Still others involved communication by mail and phone between Secrest's Virginia office and F&S's California office, and the sending of drawings on spare parts for the machine to F&S.

All of these acts were designed to consummate a business arrangement in which Secrest would profit financially by selling its product for use in California. Although F&S initially approached Secrest, the sale was a deliberate act by Secrest which generated substantial gross income and constituted economic activity within California "as a matter of commercial actuality." (*Buckeye Boiler, supra,* 71 Cal.2d at p. 902.) From the nature of the machine and the business of F&S it is evident that Secrest knew the product would, and intended that it should, enter California and here be used by F&S. Real party's cause of action arose directly from this intended effect. (See *Quattrone* v. *Superior Court, supra,* 44 Cal.App.3d 304-306.)[2]

Secrest's contacts with California did not cease with installation of the leveling machine in Signal Hill. At F&S's request Secrest has sent spare parts and continues to give advice on maintenance. Secrest has given advice and sent drawings to assist F&S in a planned adaptation of the machine. In addition, Secrest has sent directly to F&S advertisements of special sales on some of its products, and has placed advertisements in a nationally circulated trade magazine, Iron Age. Thus, the sale of the machine to F&S was not "simply an isolated occurrence" but involved "efforts of the manufacturer . . . to serve, . . . the market for its product" in California and should have caused Secrest to anticipate being haled into a California court to defend an action arising from an alleged defect in its product.[3] (Cf. *World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286.)

Each of the cases relied on by Secrest was decided on the basis of facts which differ from the case before us in a legally significant manner. In both *Interdyne Co.* v. *SYS Computer Corp.* (1973) 31 Cal.App.3d 508 [107 Cal.Rptr. 499], and *Belmont Industries* v. *Superior Court* (1973) 31 Cal.App.3d 281 [107 Cal.Rptr. 237], a California plaintiff sought to enforce in a California court a contract with an out-of-state defendant who had purchased the plaintiff's prod-

---

[2]Secrest relies heavily on its contention that the sales contract was entered into and performed entirely outside California. Resolving these conflicts between the affidavit of Jeffrey Secrest and the declaration of Franklin Dees in favor of the trial court's order, as is proper when reviewing an order sustaining jurisdiction (*Floyd J. Harkness Co.* v. *Habermann* (1976) 60 Cal.App.3d 696, 697 [131 Cal.Rptr. 672]), we find that the contract was not formed and performed entirely outside of California.

[3]The presence of two Secrest machines at the Alameda premises of North Atlantic Steel Company indicates also that the sale to F&S was not an isolated contact with California. (Cf. *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d at p. 904.)

uct or service. In the instant case, of course, the defendant derived a substantial financial benefit from sending its own product into California, where the product caused injury. In *Floyd J. Harkness Co.* v. *Amezcua* (1976) 60 Cal. App.3d 687 [131 Cal.Rptr. 667], a California resident sought to base jurisdiction on certain acts of the plaintiffs, all of which related to performance of a contract executed and performed wholly outside of California. No product of the defendant entered the state. *Circus Circus Hotels, Inc.* v. *Superior Court* (1981) 120 Cal.App.3d 546 [174 Cal.Rptr. 885], and *Fisher-Governor Co.* v. *Superior Court* (1953) 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1], involved suits arising from injuries which occurred outside California and were not caused by the defendants' California activities. In *Vibration Isolation Products, Inc.* v. *American National Rubber Co.* (1972) 23 Cal.App.3d 480 [100 Cal.Rptr. 269], the out-of-state manufacturer not only had no regular business contacts with California, it had not shipped the products which were the subject of the lawsuit to California or known that the products would be sold or shipped here by an intermediary.

Having found the requisite "minimum contacts" we must determine whether it would be fair and reasonable for a California court to exercise jurisdiction. The convenience to the plaintiff, inconvenience to the defendant and the interest of California in providing a local forum are all relevant to determining whether jurisdiction is constitutionally permissible. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at pp. 150-151.)

The interests of the plaintiff in suing locally and of California in assuming jurisdiction over this cause of action strongly favor maintenance of this suit in a California court. California has a substantial interest in providing a forum in which a California resident may seek redress for injuries sustained here in the course of his employment. (*Buckeye Boiler, supra,* 71 Cal.2d at p. 906.) As in *Buckeye Boiler,* this plaintiff would find it difficult to pursue his claim in a Virginia court. He has lost much of the use of both of his hands and his family of six persons must live on a substantially reduced income as a result of his disability.

Much of the evidence relevant to the plaintiff's cause of action is located in California as well. (See, *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d at p. 226.) The allegedly defective machine, which counsel estimates to weigh "many tons" is located here. Witnesses to the accident and its surrounding events are here. Plaintiff's treating physician, medical expert, and rehabilitation expert are all in California.

Secrest has not shown that the inconvenience of having to defend here renders the assertion of jurisdiction by a California court unfair or unreason-

able.[4] We may infer that Secrest's own expert witnesses on the design and manufacture of the machine will come from Virginia. As noted by the United States Supreme Court, that same technological progress in communication and transportation which has increased the flow of commerce between the states and the need for jurisdiction over nonresidents, has simultaneously decreased the burdens inherent in defending a lawsuit in a foreign tribunal. (*Hanson* v. *Denckla* (1958) 357 U.S. 235, at pp. 250-251 [2 L.Ed.2d 1283, at p. 1296, 78 S.Ct. 1228].) In the absence of any showing that Secrest would be more burdened by having to bring its experts to California than plaintiff would be by having to take its expert and nonexpert witnesses as well as the necessary physical evidence to Virginia, we find that the interests of California and the convenience of the plaintiff favor the exercise of jurisdiction here.

We hold that the relationship among Secrest, California and this cause of action justify the exercise of jurisdiction by a California court over Secrest for purposes of this lawsuit, and that jurisdiction is consistent with the United States and California Constitutions.

The alternative writ is discharged and the writ of mandate is denied.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Amerian, J.,* concurred.

---

[4]Secrest contends that matters pertaining to the convenience of the forum may only be considered after jurisdiction has been established. The contention was rejected by this court in *Cornelison.* (See, 16 Cal.3d at pp. 150-151.) We assess the convenience of these parties only to determine whether jurisdiction is proper. Secrest has not moved to stay or dismiss the action on the ground of inconvenient forum.

*Assigned by the Chairperson of the Judicial Council.