[No. B151190. Second Dist., Div. Three. June 25, 2002.]

BRIDGESTONE CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
T & T TRUCK & CRANE SERVICE, INC., et al., Real Parties in
Interest.

**COUNSEL**

Squire, Sanders & Dempsey, Allan A. Shenoi, Xianchun J. Vendler and Tonya C. Kong for Petitioner.

No appearance for Respondent.

Acker, Kowalick & Whipple, Stephen Acker and Leslie Anne Burnet for Real Parties in Interest.

## OPINION

**KITCHING, J.**—A foreign tire manufacturer regularly sold a large volume of tires to a California distributor, one of which allegedly failed and caused injury. The injured party sued the driver and others who then cross-complained against the manufacturer for indemnity and contribution. The manufacturer moved to quash service of summons on the ground that it does not have sufficient contacts with California to be subject to personal jurisdiction here. The trial court denied the motion. We conclude pursuant to *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462 [105 S.Ct. 2174, 85 L.Ed.2d 528], *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434 [58 Cal.Rptr.2d 899, 926 P.2d 1085], and *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664 [190 Cal.Rptr. 175, 660 P.2d 399] that the manufacturer purposefully availed itself of the benefits of conducting activities in California and obtained the benefits and protections of California's laws by selling its products to a California distributor for resale in California. We therefore conclude that the manufacturer is subject to the jurisdiction of California courts, and that the trial court properly denied the motion to quash.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff John S. Lee sued defendants T & T Truck & Crane Service, Inc., Kenai Drilling, Ltd., and Gene Coker (collectively Truckers) in February 1999 for damages arising from the explosion of a trailer tire. Truckers are, respectively, the employer of the truck driver who was towing the trailer, trailer owner, and truck driver. Lee named Bridgestone/Firestone, Inc. (Firestone), a distributor of Bridgestone tires in California, as an additional defendant in December 1999.

Truckers cross-complained against Schoettler Tire and Firestone in February 2000 alleging that the cross-defendants had manufactured, designed, distributed, sold, installed, or were otherwise responsible for the tire and asserting causes of action for equitable indemnity and contribution. Truckers named Bridgestone Corporation (Bridgestone), a Japanese corporation and manufacturer of the tire, as a cross-defendant in May 2000.

Bridgestone moved to quash service of summons in January 2001 on the grounds that it does not have sufficient contacts with California to be subject to personal jurisdiction in California. It presented evidence that it is a Japanese corporation, has its principal place of business in Japan, manufactures and sells tires in Japan, is not licensed to do business in California, conducts no business in California and has no presence here, and does not

advertise or market its products in California. It also presented evidence that Firestone is a wholly owned subsidiary of Bridgestone, is incorporated in Ohio, has its principal place of business in Tennessee, and maintains a separate corporate identity. Bridgestone argued that merely placing goods in the stream of commerce with knowledge that they may be purchased in California does not constitute sufficient contacts to support personal jurisdiction.

Truckers opposed the motion arguing that Bridgestone has purposefully directed its activities toward California by delivering tires into the stream of commerce with the expectation that they would be purchased by consumers in California, and that it is reasonable to subject Bridgestone to personal jurisdiction here. Truckers also argued that Firestone as a wholly owned subsidiary of Bridgestone should be deemed a general agent for Bridgestone in California. They presented evidence that Firestone had distributed the subject tire and regularly distributed similar Bridgestone tires, and argued that Bridgestone knew that the tires would be purchased by California consumers.

The court continued the hearing on the motion to quash from February to May 2001 and allowed Truckers to conduct discovery on the issue of personal jurisdiction and to file supplemental opposition papers. Truckers presented evidence that Firestone's distribution center in Ontario, California receives at least 25,000 tires per month manufactured by Bridgestone in Japan, and then distributes the tires to 850 to 900 Firestone dealers, approximately one-half of whom are in California. They also presented evidence that several Bridgestone employees have visited Firestone's distribution center in recent years and that the manager of Firestone's distribution center has visited Bridgestone in Japan on several occasions.

The court denied the motion to quash. It found that Bridgestone sold tires to Firestone in Japan, that no evidence showed Bridgestone sold tires in California, and that Firestone did not act as Bridgestone's general agent in California. It stated that Firestone's contacts with California cannot be imputed to Bridgestone based solely on their subsidiary-parent relationship or on an agency relationship. It concluded, however, that Bridgestone purposely directed its activities toward California by placing in the stream of commerce "[a]n enormous amount of tires" "to be sold primarily in California" and by entering into a trademark license agreement with Firestone. Thus, it concluded, Bridgestone and Firestone created a "symbiotic relationship" to market and distribute tires in California. The court also stated that California's interests in the dispute are substantial because the injured parties are California residents and "[t]his case concerns safety issues on a grand scale."

Bridgestone petitioned this court for extraordinary writ relief. We issued an order to show cause and stayed all trial court proceedings against Bridgestone.

## CONTENTIONS

Bridgestone contends that (1) its sale of tires to Firestone in Japan with the expectation that Firestone would sell tires in California does not constitute activity purposefully directed toward California so as to support personal jurisdiction; (2) its license agreement with Firestone in addition to the tire sales does not constitute activity purposefully directed toward California; (3) Truckers' cross-complaint for equitable indemnity and contribution does not arise out of the license agreement, so there is no basis for specific jurisdiction; and (4) California does not have a substantial interest in Bridgestone's dispute with Truckers because the dispute involves primarily indemnification, not product safety.

## DISCUSSION

### 1. *Constitutional Limits to the Exercise of Personal Jurisdiction*

■ A California court may exercise personal jurisdiction to the extent allowed under the United States Constitution and the California Constitution. (Code Civ. Proc., § 410.10; *Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at p. 444.) Under the Fourteenth Amendment due process clause, a state court may exercise personal jurisdiction over a nonresident defendant who has not been served with process inside the state only if the defendant has sufficient "minimum contacts" with the state so that the exercise of jurisdiction is reasonable and comports with " 'fair play and substantial justice.' " (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316-317 [66 S.Ct. 154, 158-159, 90 L.Ed. 95, 161 A.L.R. 1057]; *Vons Companies*, at p. 444.)

■ A nonresident defendant whose activities within the state are substantial, continuous, and systematic is subject to "general jurisdiction" in the state, meaning jurisdiction on any cause of action. (*Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445-446 [72 S.Ct. 413, 418-419, 96 L.Ed. 485]; see *Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at pp. 445-446.) Absent such pervasive activities, a defendant is subject to "specific jurisdiction" only if (1) the defendant *purposefully availed* itself of the benefits of conducting activities in the forum state by purposefully directing its activities toward the state, thereby obtaining the benefits and protections of the state's laws (*Burger King Corp. v. Rudzewicz, supra*, 471

U.S. at pp. 475-476 [105 S.Ct. at pp. 2183-2184]; *Vons Companies,* at pp. 449-451); (2) the dispute arises out of or has a substantial connection with the defendant's contacts with the state (*Vons Companies,* at pp. 452-453; see *Burger King,* at p. 472 [105 S.Ct. at pp. 2181-2182]); and (3) the exercise of jurisdiction would be fair and reasonable (*Burger King,* at pp. 476-478 [105 S.Ct. at pp. 2184-2185]; *Vons Companies,* at pp. 447-448). These guidelines are not susceptible of mechanical application, and the jurisdictional rules are not clear-cut. Rather, a court must weigh the facts in each case to determine whether the defendant's contacts with the forum state are sufficient. (*Burger King,* at pp. 478-479, 486, fn. 29 [105 S.Ct. at pp. 2185-2186, 2189-2190]; *Kulko v. California Superior Court* (1978) 436 U.S. 84, 89, 92 [98 S.Ct. 1690, 1695, 1696-1697, 56 L.Ed.2d 132]; *Vons Companies,* at p. 450.)

■ A plaintiff opposing a motion to quash service of summons bears the initial burden to demonstrate facts that support the exercise of jurisdiction. If the plaintiff satisfies that burden, it then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable. (*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at p. 477 [105 S.Ct. at pp. 2184-2185]; *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at pp. 449, 476.)

We review the trial court's factual findings in connection with its ruling on the motion under the substantial evidence standard. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 449.) If there is no conflicting evidence, whether the court can exercise personal jurisdiction is a legal question that we review de novo. (*Ibid.*) We review the trial court's ruling, not its reasoning. (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].)

2. *Bridgestone Purposefully Availed Itself of the Benefits of Conducting Activities in California*

■ The parties' dispute turns largely on the question whether, as a matter of law, Bridgestone's tire sales to Firestone in Japan with the expectation that Firestone or another company would sell the tires to consumers in California constitutes purposeful availment of the benefits of conducting activities in this state. We conclude that under governing United States Supreme Court and California Supreme Court precedents the answer is yes.

a. *Stream of Commerce*

■ The United States Supreme Court has explained that placing goods in the stream of commerce with the expectation that they will be purchased

by consumers in the forum state indicates an intention to serve that market and constitutes purposeful availment (*Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at p. 473 [105 S.Ct. at pp. 2182-2183]; *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297-298 [100 S.Ct. 559, 567-568, 62 L.Ed.2d 490]; see *Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at p. 447) as long as the conduct creates a " 'substantial connection' " with the forum state (*Burger King*, at p. 475 [105 S.Ct. at p. 2184]).

"[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. [Citation.]" (*World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at pp. 297-298 [100 S.Ct. at p. 567].)

■ The foreseeability that the defendant's product will cause injury in the forum state due to an isolated incident does not establish purposeful availment. (*Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at p. 474 [105 S.Ct. at p. 2183]; *World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at p. 295 [100 S.Ct. at p. 566].) A defendant cannot be haled into court based on " 'random,' 'fortuitous,' or 'attenuated' contacts, [citations]" or based on the " 'unilateral activity of another party or a third person,' [citation]." (*Burger King*, at p. 475 [105 S.Ct. at p. 2183], fn. omitted.) Rather, there must be some act by which the defendant creates a " 'substantial connection' " with the forum state " 'such that he should reasonably anticipate being haled into court there.' " (*Burger King*, at pp. 474, 475 [105 S.Ct. at p. 2183-2184].)

The California Supreme Court has equated purposeful availment with " 'engaging in economic activity within this state "as a matter of commercial actuality." ' " (*Secrest Machine Corp. v. Superior Court, supra*, 33 Cal.3d at p. 669, quoting *Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 902 [80 Cal.Rptr. 113, 458 P.2d 57].) It has explained that if the purchase or use of a product in California " 'generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about this result,' " the manufacturer has obtained the benefits and protections of California's laws, and the

requirement of purposeful availment is satisfied. (*Secrest,* at p. 669, quoting *Buckeye Boiler,* at p. 902.) The court in *Secrest* distinguished the mere foreseeability that a product would cause injury in the forum state from those circumstances where the sale of a product " 'arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product . . . .' " (*Secrest,* at p. 670, quoting *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at pp. 297-298 [100 S.Ct. at pp. 567-568].) The *Secrest* court concluded, consistent with *World-Wide Volkswagen,* that in the latter circumstance it is reasonable to subject the manufacturer to personal jurisdiction in the forum state. (*Secrest,* at p. 670.)

The defendant in *Secrest Machine Corp. v. Superior Court, supra,* 33 Cal.3d 664, sold an industrial machine directly to a California user, sent an employee to California to assist in the installation, and later provided spare parts and advice on maintenance and advertised other products for sale. (*Id.* at pp. 670-671.) The *Secrest* court concluded that the sale was not simply an isolated occurrence but resulted from the defendant's efforts to serve the California market. The court concluded that in those circumstances and since the defendant earned substantial income from the sale, the defendant had engaged in economic activity in California " 'as a matter of commercial actuality.' " (*Id.* at p. 671.)

Several California courts have applied this rule, holding that the defendant's sales to California distributors or other efforts to market a product to customers in this state indirectly through an intermediary constituted economic activity within California as a matter of commercial actuality where the defendant earned gross income from the activity. (*As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859, 1871 [58 Cal.Rptr.2d 654]; *Furda v. Superior Court* (1984) 161 Cal.App.3d 418, 424 [207 Cal.Rptr. 646]; *St. Joe Paper Co. v. Superior Court* (1981) 120 Cal.App.3d 991, 999-1000 [175 Cal.Rptr. 94]; *Sanders v. CEG Corp.* (1979) 95 Cal.App.3d 779, 785-786 [157 Cal.Rptr. 252].) In *As You Sow,* the court held that a manufacturer whose only contacts with California were through a series of sales to California distributors was subject to personal jurisdiction because the sales to California distributors reflected an effort to benefit from the California market and constituted economic activity within California " ' "as a matter of commercial actuality." ' [Citation.]" (*As You Sow,* at pp. 1864-1865, 1871.)

The United States Supreme Court addressed the stream of commerce doctrine in *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102 [107 S.Ct. 1026, 94 L.Ed.2d 92], but the justices were split on the issue and did not hold on point. The majority holding in *Asahi* was that it was

unreasonable to exercise jurisdiction over the defendant regardless of whether there was purposeful availment (*id.* at p. 114 [107 S.Ct. at p. 1033]), as discussed, *post.* Thus, *Asahi* did not overrule prior United States Supreme Court opinions articulating the stream of commerce doctrine and did not affect California's "commercial actuality" standard expressed in *Secrest Machine Corp. v. Superior Court, supra*, 33 Cal.3d 664. (But see *Felix v. Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 114-117 [241 Cal.Rptr. 670, 69 A.L.R.4th 1].)

We conclude that a manufacturer's placement of goods in the stream of commerce with the expectation that they will be purchased or used by consumers in California indicates an intention to serve the California market "directly or indirectly" (*World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at p. 297 [100 S.Ct. at p. 567]) and constitutes purposeful availment if the income earned by the manufacturer from sale or use of its product in California is substantial. (*Secrest Machine Corp. v. Superior Court, supra*, 33 Cal.3d at pp. 669-670; see *Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at p. 447.)

   b.  *Application of the "Purposeful Availment" Requirement to This Case Supports Jurisdiction over Bridgestone*

Bridgestone sold at least 25,000 tires per month to Firestone in Japan for delivery to California, approximately one-half of which were sold to consumers in California. Bridgestone's representatives visited Firestone's distribution center in Ontario and undoubtedly were aware of the large volume of Bridgestone tires that Firestone regularly distributed for sale in California. Bridgestone's sale of tires in Japan for resale in California was not random or fortuitous, and Bridgestone earned substantial income from those sales. We therefore conclude that by purposefully directing its tire sales toward California, Bridgestone purposefully availed itself of the benefits of conducting activities in this state.

   3.  *The Dispute Arises out of or Is Substantially Connected to Bridgestone's California Contacts*

The dispute must arise out of or have a substantial connection to the defendant's contacts with the forum state for the defendant to be subject to specific jurisdiction. (*Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at pp. 445-446; *Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at p. 472 [105 S.Ct. at pp. 2181-2182].)

Truckers allege causes of action against Bridgestone for equitable indemnity and contribution and seek to impose liability on Bridgestone as manufacturer, designer, and supplier of the allegedly defective tire. Bridgestone's

contacts with California are based on its tire sales to Firestone, as described *ante*. Since Bridgestone sold the tire to Firestone in the course of those sales, the dispute arises out of or is substantially connected to Bridgestone's California contacts.

### 4. *The Exercise of Jurisdiction Would Be Fair and Reasonable*

Bridgestone has not satisfied its burden of showing that the exercise of jurisdiction would be unreasonable in this case. Apart from its arguments against the first two elements, Bridgestone's only relevant argument going to reasonableness is that California does not have a substantial interest in the dispute because the dispute involves primarily indemnification, not product safety, citing *Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. 102.

*Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. 102, involved a cross-complaint for indemnity by a Taiwanese manufacturer of motorcycle tire tubes against Asahi, a Japanese manufacturer of tire tube valve assemblies. (*Id.* at p. 106 [107 S.Ct. at p. 1029].) The high court held that Asahi was not subject to specific jurisdiction in California because, regardless of whether the cross-complainant established purposeful availment, it was unreasonable to exercise jurisdiction in California. (*Id.* at p. 114 [107 S.Ct. at p. 1033].) It stated that in evaluating the reasonableness of personal jurisdiction, a court must consider (1) the burden on the foreign defendant of defending an action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) judicial economy; and (5) the states' shared interest " 'in furthering fundamental substantive social policies.' " (*Id.* at p. 113 [107 S.Ct. at p. 1033]; citing *World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at p. 292 [100 S.Ct. at p. 564].) When minimum contacts are established, the interests of the plaintiff and forum state often outweigh the serious burdens imposed on a foreign defendant. (*Asahi*, at p. 114 [107 S.Ct. at p. 1033].)

The *Asahi* court concluded, however, that the interests of the Taiwanese manufacturer and California were slight, for several reasons: the dispute involved only an indemnity claim between two foreign parties based on a transaction that took place in Taiwan; it would not be more convenient to litigate in California; California's interests were considerably diminished because the cross-complainant was not a California resident; and the state's interest in enforcing its safety standards was not at issue because the dispute concerned primarily indemnification and California law did not necessarily apply. (*Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. at pp. 114-115 [107 S.Ct. at pp. 1033-1034].) The high court stated that a court

should be cautious in extending personal jurisdiction to a foreign defendant where the interests of the plaintiff and forum state are minimal. (*Id.* at p. 115 [107 S.Ct. at pp. 1033-1034].) Based on those considerations, the court concluded that it would be unreasonable and unfair to exercise personal jurisdiction over Asahi in California. (*Id.* at p. 116 [107 S.Ct. at p. 1034].)

Bridgestone has not made a similar showing here. Truckers apparently are all California residents whose common interest in convenient and effective relief is best served by a California forum, and California has an interest in providing a convenient forum for its residents to redress injuries caused by out-of-state actors. (*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at p. 473 [105 S.Ct. at pp. 2182-2183]; *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th at p. 473.) This is true particularly where Truckers are currently defending an action in California in which Bridgestone may share some liability, as was the case in *Vons Companies, Inc. v. Seabest Foods, Inc., supra,* 14 Cal.4th 434, which also involved a cross-complaint for indemnity. (*Id.* at pp. 442, 477.) Moreover, judicial efficiency is best served by litigating the plaintiff's claims against Truckers and Truckers' claims against Bridgestone in a single forum. (*Id.* at p. 477.) We conclude that these factors outweigh the burdens placed on Bridgestone to defend itself in California.

## DISPOSITION

The petition is denied. The order to show cause is discharged, and the stay of all trial court proceedings against Bridgestone is lifted. Truckers shall recover their costs in this writ proceeding.

Klein, P. J., and Aldrich, J., concurred.

Petitioner's petition for review by the Supreme Court was denied September 25, 2002.