[No. C063624. Third Dist. June 8, 2011.]

THE PEOPLE ex rel. KAMALA D. HARRIS, as Attorney General, etc.,
Plaintiff and Appellant, v.
NATIVE WHOLESALE SUPPLY COMPANY, Defendant and Respondent.

## Counsel

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dennis Eckhart and Karen Leaf, Assistant Attorneys General, Michelle L. Hickerson and Michael M. Edson, Deputy Attorneys General, for Plaintiff and Appellant.

Fredericks Peebles & Morgan, John M. Peebles and Darcie L. Houck for Defendant and Respondent.

## OPINION

**BUTZ, J.**—The State of California (the State) sued defendant Native Wholesale Supply Company (NWS) for allegedly violating state law on cigarette distribution[1] and state law on cigarette fire safety.

NWS moved successfully to quash service for lack of personal jurisdiction.

NWS is an out-of-state, tribal-chartered corporation that is owned by a Native American individual. Its principal business is the sale and distribution of cigarettes manufactured by Grand River Enterprises Six Nations Ltd. (Grand River), a tribal-owned corporation in Canada. Since late 2003, NWS has sold hundreds of millions of Grand River cigarettes to a small Indian tribe in California, and these cigarettes, in turn, have been sold to the California public.

■ Based on this scenario, we conclude that NWS has purposefully derived benefit from California activities under the stream of commerce theory, sufficient to invoke personal jurisdiction. Indeed, for personal jurisdiction purposes, we see not just a stream of commerce, but a torrent. Consequently, we shall reverse the order quashing service and remand this matter to the trial court. (Code Civ. Proc., § 904.1, subd. (a)(3).)

We will set forth the pertinent facts in the discussion that follows.

## DISCUSSION

### I.   The Law

The constitutional limits to the exercise of personal jurisdiction are discussed in *Bridgestone Corp. v. Superior Court* (2002) 99 Cal.App.4th 767 [121 Cal.Rptr.2d 673] (*Bridgestone*):

■ "A California court may exercise personal jurisdiction to the extent allowed under the United States Constitution and the California Constitution. (Code Civ. Proc., § 410.10; *Vons Companies, Inc. v. Seabest Foods, Inc.* [(1996)] 14 Cal.4th [434,] 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) Under the Fourteenth Amendment due process clause, a state court may exercise personal jurisdiction over a nonresident defendant who has not been served with process inside the state only if the defendant has sufficient 'minimum contacts' with the state so that the exercise of jurisdiction is reasonable and

---

[1] The state law in question is based on the 1998 litigation settlement agreement between American tobacco companies and 46 states. (See Rev. & Tax. Code, § 30165.1.)

comports with ' "fair play and substantial justice." ' (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316–317 [90 L.Ed. 95, 102–103, 66 S.Ct. 154]; *Vons Companies*, at p. 444.)

■ "A nonresident defendant whose activities within the state are substantial, continuous, and systematic is subject to 'general jurisdiction' in the state, meaning jurisdiction on any cause of action. [Citations.] Absent such pervasive activities, a [nonresident] defendant is subject to 'specific jurisdiction' only if *(1)* the defendant *purposefully availed* itself of the benefits of conducting activities in the forum state . . . [citations]; *(2)* the dispute arises out of or has a substantial connection with the defendant's contacts with the state [citations]; and *(3)* the exercise of jurisdiction would be fair and reasonable [citations]." (*Bridgestone, supra*, 99 Cal.App.4th at pp. 773–774, italics added [citing, for the three-factor test, *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, 475–478 [85 L.Ed.2d 528, 542–545, 105 S.Ct. 2174] (*Burger King*) and *Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at pp. 447–453 (*Vons Companies*)].)

"Purposeful availment" (factor No. (1) above) is shown if the nonresident defendant has "purposefully directed" its activities at forum residents, "purposefully derived benefit" from forum activities, or "purposely availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. (*Vons Companies, supra*, 14 Cal.4th at p. 446, citing *Burger King, supra*, 471 U.S. at pp. 472–473, 475 [85 L.Ed.2d at pp. 541–542].)

■ The United States Supreme Court has explained that placing goods in the stream of commerce with the expectation that they will be purchased by consumers in the forum state indicates an intention to serve that market and constitutes purposeful availment, as long as the conduct creates a "substantial connection" with the forum state—for example, if the income earned by a manufacturer or distributor from the sale or use of its goods in the forum state is "substantial." (*Bridgestone, supra*, 99 Cal.App.4th at pp. 774–775, 777; see *id.* at p. 776, citing *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664, 670–671 [190 Cal.Rptr. 175, 660 P.2d 399] (*Secrest*) and *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297–298 [62 L.Ed.2d 490, 501–502, 100 S.Ct. 559] (*World-Wide*); see also *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 112, 116–117, 122 [94 L.Ed.2d 92, 104–105, 107–108, 110–111, 107 S.Ct. 1026] (*Asahi*) (plur. opn. of O'Connor, J.; conc. opns. of Brennan, J., & Stevens, J., conc. in part & conc. in the judg.).)

■ Purposeful availment does not arise where a nonresident manufacturer or distributor merely foresees that its product will enter the forum state. But

purposeful availment is shown where the sale or distribution of a product " 'arises from the efforts of the manufacturer or distributor to serve, directly *or indirectly,* the [forum state's] market for its product . . . .' " (*Secrest, supra,* 33 Cal.3d at p. 670, italics added, quoting *World-Wide, supra,* 444 U.S. at p. 297 [62 L.Ed.2d at p. 501]; see also *Bridgestone, supra,* 99 Cal.App.4th at p. 776.)

■   The California Supreme Court has equated "purposeful availment" with engaging in economic activity in California " 'as a matter of commercial actuality' "—i.e., as a matter of "economic reality." (*Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 901–902, 903 [80 Cal.Rptr. 113, 458 P.2d 57] (*Buckeye Boiler*).)

■   A plaintiff opposing a defendant's motion to quash service has the burden of establishing factors No. (1) (the defendant's purposeful availment) and No. (2) (lawsuit relates to the defendant's contacts with state). (*Bridgestone, supra,* 99 Cal.App.4th at p. 774.) If the plaintiff does so, the burden then shifts to the defendant to show factor No. (3), that the exercise of jurisdiction would be unreasonable. (*Ibid.*; *Burger King, supra,* 471 U.S. at p. 476 [85 L.Ed.2d at p. 543].)

If the material facts are undisputed, as here, we independently review the determination of personal jurisdiction. (*Vons Companies, supra,* 14 Cal.4th at p. 449; *Bridgestone, supra,* 99 Cal.App.4th at p. 774.)

## II.   The Facts

The undisputed material facts are as follows.

NWS is a tribal-chartered corporation headquartered on an Indian reservation in New York. The president and sole owner of NWS is Arthur Montour, a member of the Seneca Nation of Indians. NWS (1) imports cigarettes from Grand River, a tribal-owned Canadian cigarette manufacturer; (2) stores the cigarettes at three locations in the United States (including the free trade zone in Las Vegas, Nev.); and (3) then sells the cigarettes to tribal entities in the United States.

In California, NWS sells the Grand River cigarettes primarily to Big Sandy Rancheria (Big Sandy), an Indian tribe with 431 members located on a reservation about 40 miles northeast of Fresno. A sales transaction occurs when Big Sandy places an order with NWS. NWS then releases the cigarettes from storage and arranges for their transport either to Big Sandy or to other Indian retailers (as apparently directed by Big Sandy) in California. Big

Sandy and the other Indian retailers then sell the cigarettes to the general public in California. The cigarettes are stamped " 'For Reservation Sales Only.' "

Using this system since late 2003, NWS has delivered over 325 million cigarettes, worth nearly $12 million, to California. In 2007 alone, NWS shipped and sold approximately 80 million cigarettes (4 million standard packs) to the 431-member Big Sandy.

The present lawsuit had its genesis in the 1998 litigation settlement agreement that was reached between several states (including California) and major American tobacco manufacturers.

In November 1998, California and 45 other states entered into a master settlement agreement (the MSA or Master Settlement Agreement) with the major American tobacco manufacturers. In exchange for a liability release from the states for smoking-related public healthcare costs, the settling manufacturers agreed to limit their marketing and to pay the settling states billions of dollars in perpetuity.

To protect the efficacy of the MSA, which applies only to tobacco manufacturers, California enacted a statute in 2003 (the Directory law) (Stats. 2003, ch. 890, § 7, p. 6525), which, in effect, allegedly prohibits any person from selling, distributing, transporting, importing, or causing to be imported, cigarettes that do not comply with the MSA's requirements, and that the person "knows or should know" will be sold, offered, or possessed for sale in California (Rev. & Tax. Code, § 30165.1, subds. (e), (b), (c); see *State ex rel. Edmondson v. Native Wholesale Supply* (2010) 2010 OK 58 [237 P.3d 199, 203–204] (*Edmondson*)).

The State sued NWS, principally alleging that NWS violated the Directory law as well as state law on cigarette fire safety. (Health & Saf. Code, § 14950 et seq.)

### III. Applying the Law to the Facts

#### A. *Factor No. (1)—Purposeful Availment/Minimum Contacts*

The State alleges without dispute that, since the end of 2003, NWS has shipped and sold over 325 million cigarettes to Big Sandy and, as apparently directed by Big Sandy, to other Indian retailers in California, reaping millions of dollars in the process. In 2007 alone, NWS shipped and sold approximately 80 million cigarettes (i.e., 4 million standard cigarette packs) to Big

Sandy. Again, Big Sandy has just 431 members; in other words, even if nearly every member of Big Sandy smoked *two* packs every day that would still total only about 280,000 packs a year. These cigarettes, in turn, are sold to the general public in California.

As we have seen, "purposeful availment"—which is the shorthand standard for the "minimum contacts" that a nonresident defendant must have with a forum state for the forum to assert personal jurisdiction consistent with due process—is shown if the nonresident defendant has " 'purposefully derived benefit' " from forum activities. (*Vons Companies, supra,* 14 Cal.4th at p. 446.) Placing goods in the stream of commerce with the expectation that they eventually will be purchased by consumers in the forum state indicates an intention to serve that market and constitutes purposeful availment, as long as the conduct creates a "substantial connection" with the forum state; for example, if the income earned by a manufacturer or distributor from the sale or use of its goods in the forum state is "substantial." (*Bridgestone, supra,* 99 Cal.App.4th at pp. 774–775, 777; see also *Bridgestone,* at p. 776, citing *Burger King, supra,* 471 U.S. at pp. 473, 475 [85 L.Ed.2d at pp. 541, 542] and *World-Wide, supra,* 444 U.S. at pp. 297–298 [62 L.Ed.2d at pp. 501–502]; *Asahi, supra,* 480 U.S. at pp. 112, 116–117, 122 [94 L.Ed.2d at pp. 104–105, 107–108, 110–111] (plur. opn. of O'Connor, J.; conc. opns. of Brennan, J., & Stevens, J., conc. in part & conc. in the judg.); *Secrest, supra,* 33 Cal.3d at p. 670.)

As a matter of "commercial actuality,"—i.e., as a matter of "economic reality" (*Buckeye Boiler, supra,* 71 Cal.2d at pp. 901–903), NWS's distribution into California of hundreds of millions of profitable cigarettes over the past few years, via a small Indian tribal network in which the cigarettes are eventually sold to the general public, meets the "minimum contacts" legal standard of "purposeful availment": NWS has "purposefully derived benefit" from California activities through a "substantial" stream of commerce.

In a recent decision, the Supreme Court of Oklahoma found similarly as to NWS involving a nearly identical distributive process, reasoning:

"The State alleges [without real dispute] that over a fifteen-month period *more than one hundred million cigarettes worth more than eight million dollars* were sold into the Oklahoma market through this process. . . . [¶] . . . [¶]

". . . [W]e are looking here at a distributor [(i.e., NWS)] of a finished product—cigarettes—who causes the product to be delivered to [a] [tribal] entity in this state in such quantities that its ultimate destination can only be the general public in this state. While the [tribal] entity with which Native

Wholesale Supply [(NWS)] directly deals may operate on tribal land, that tribal land is not located in some parallel universe. It is geographically within the State of Oklahoma. Both entities are engaged in an enterprise whose purpose is to serve the Oklahoma market for cigarettes.

"This is not a case where [NWS] is merely aware that its product might be swept into this State and sold to Oklahoma consumers. The sheer volume of cigarettes sold by [NWS] to [tribal] wholesalers in this State shows the Company to be part of a distribution channel for Seneca [Grand River] cigarettes that intentionally brings that product into the Oklahoma market-place. [NWS] is not a passive bystander in this process. It reaps a hefty financial reward for delivering its products into the stream of commerce that brings it into Oklahoma. To claim, as [NWS] does, that it does not know, expect, or intend that the cigarettes it sells to [the tribal entity] are intended for distribution and resale in Oklahoma is simply disingenuous.

". . . We hence hold that the minimum contacts segment of due process analysis is satisfied." (*Edmondson, supra,* 237 P.3d at pp. 208–209, fn. omitted.)[2]

As evident from our extensive quoting of the *Edmondson* decision, we find "Oklahoma is OK" on this point. Such persuasion was not available to the trial court when it granted NWS's motion to quash. In line with *Edmondson,* we conclude that NWS has minimum contacts with California sufficient for the State to assert personal jurisdiction over the company consistent with due process.

The presence of minimum contacts, however, does not end the due process inquiry. We must still consider factors No. (2) and No. (3), to which we turn now. (*Bridgestone, supra,* 99 Cal.App.4th at pp. 773–774.)

### B.  Factor No. (2)—Lawsuit Arises out of Defendant's Contacts with the State

This factor is readily met here. In this lawsuit, the State alleges that NWS is violating California's cigarette distribution and fire safety laws. NWS's ciga-rette distribution in California *constitutes* NWS's contacts with California. Obviously, then, this lawsuit "arises out of" NWS's contacts with California. (*Bridgestone, supra,* 99 Cal.App.4th at p. 774.)

---

[2] We recognize that Oklahoma's population is about a tenth of California's, but this does not lessen the persuasive punch of this reasoning with regard to NWS's activities in California.

### C. Factor No. (3)—Exercising Personal Jurisdiction Is Fair and Reasonable

This factor poses little hindrance to reversal as well.

■ "[I]n evaluating the reasonableness of personal jurisdiction, a court must consider (1) the burden on the foreign defendant of defending an action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) judicial economy; and (5) the states' shared interest ' "in furthering fundamental substantive social policies." ' " (*Bridgestone, supra*, 99 Cal.App.4th at p. 778, citing *Asahi, supra*, 480 U.S. at p. 113 [94 L.Ed.2d at p. 105] and *World-Wide, supra*, 444 U.S. at p. 292 [62 L.Ed.2d at p. 498].)

NWS can hardly claim a heavy burden in having to defend this action in California. After all, NWS stores its highly profitable cigarettes just next door in Nevada.

The forum state's interest and the plaintiff's interest merge here, creating a potent combination. As *Edmondson* recognized, the integrity of the Master Settlement Agreement depends on the ability of the State to enforce its terms. (See *Edmondson, supra*, 237 P.3d at p. 209.)

That leaves judicial economy and the states' shared interest in social policy. As the court in *Edmondson* aptly put it once again, "[t]he courts of this State and only the courts of this State [(here, California)] offer the most efficient and rational forum for the resolution of a controversy over the meaning and effect of State statutes governing the allocation of the financial and health-care costs associated with smoking between the public and private sectors." (*Edmondson, supra*, 237 P.3d at p. 209.)

We conclude the trial court erred in granting NWS's motion to quash service. The State has personal jurisdiction over NWS regarding this lawsuit.[3]

---

[3] In light of our resolution, it is unnecessary to address the State's two other contentions on appeal; namely, that the trial court abused its discretion (1) in failing to sanction NWS for discovery violations, and (2) in excluding certain evidence. Both contentions involve the issue of personal jurisdiction.

Also, we express no views on the Indian commerce clause, the interstate commerce clause, federal law preemption, or Indian self-government—all of which are discussed briefly on appeal and involve the issue of whether the State has authority to regulate NWS's cigarette sales and distribution. These legal principles and this issue may implicate the merits of this lawsuit and/or subject matter jurisdiction; again, we express no views on these matters. (See, e.g., *Edmondson, supra*, 237 P.3d at pp. 209–217 [discussing Indian commerce clause].) The

## DISPOSITION

The order quashing service on NWS is reversed. The matter is remanded to the trial court for further proceedings. The State is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Raye, P. J., and Robie, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 21, 2011, S194878. Werdegar, J., did not participate therein.

---

parties did not adequately argue below, and have not adequately briefed here, any of these issues. This is understandable because the issue of the State's *personal jurisdiction* over NWS in this lawsuit was the only issue actually before the trial court.

Finally, we deny the State's request for judicial notice in support of its reply brief (which goes to evidentiary issues involving personal jurisdiction), as well as NWS's related motion to strike portions of the State's reply brief. We also deny NWS's request for judicial notice in support of its respondent's brief (which cites to pending superior court orders in other cases, as well as to treatises regarding the regulation of Indian commerce).