[Civ. No. 38764. Second Dist., Div. Four. Feb. 11, 1972.]

VIBRATION ISOLATION PRODUCTS, INC.,
Plaintiff and Appellant, v.
AMERICAN NATIONAL RUBBER CO., Defendant and Respondent.

COUNSEL

Staitman & Snyder and Jack M. Staitman for Plaintiff and Appellant.

McCutchen, Black, Verleger & Shea, G. William Shea, Franklin H. Wilson and James E. Allen, Jr., for Defendant and Respondent.

## OPINION

KINGSLEY, J.—Plaintiff appeals[1] from an order of the superior court granting the motion of a foreign corporation to quash service of summons on it. For the reasons set forth below, we affirm the order.

Plaintiff is a California corporation engaged (inter alia) in the manufacture of ship fenders for the United States Navy. In the course of that business, it uses Neoprene discs which must meet minimum standards commonly referred to as "Mil-R 6130 Grade A firm." It purchased a quantity of Neoprene from defendant Durkee-Atwood Company, a Minnesota corporation, under a contract in which Durkee-Atwood warranted that the Neoprene met the minimum standards above referred to. Durkee-Atwood, in turn, had purchased Neoprene to fill plaintiff's order from defendant American National Rubber Company (American), a West Virginia corporation with its plant in West Virginia, again under purchase orders calling for the product to meet the above standards. Plaintiff's complaint herein[2] alleges that, in fact, the Neoprene did not meet those standards, and, that, as a result, it suffered loss under its contract with the Navy Department.[3]

■ Treating the operative facts most favorably to American, as we are required to do on appeal (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.* (1969) 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320]; *Detsch & Co.* v. *Calbar, Inc.* (1964) 228 Cal.App.2d 556, 562-563 [39 Cal.Rptr. 626]), the relations between American and the State of California may be summarized as follows:

(1) Since 1969, American has sold a small quantity of its products to California customers (including some goods sold to customers in Detroit but shipped, at the customers' direction, to California destinations). The gross amount of such orders was under $25,000.[4] All orders were sent by the purchasers to American at its West Virginia office, were accepted there, and were shipped f.o.b. to its West Virginia plant, with title passing to the purchasers at that point.

---

[1]Code of Civil Procedure, section 904.1, subdivision (c).

[2]The original complaint was against Durkee-Atwood only; after discovery that American was the manufacturer, an amended complaint was filed adding American as another defendant. It is the service of that amended complaint which is herein involved and it is its allegations which we summarize in the text.

[3]We gather from the declarations filed on the motion to quash that Durkee-Atwood denies the breach of warranty claim. What other issues there may be between plaintiff and Durkee-Atwood do not appear from the record before us.

[4]The California shipment amounted to about 1 percent of American's business. None of the sales to California buyers or the subject matter of shipments to California involved Neoprene.

(2) American has no sales representatives or other sales agent in California; it maintains no office in California; it is not qualified to do business in California; it has not designated any agent for service in California.

(3) In 1970 a vice president of American called on plaintiff, at plaintiff's request, to discuss possible sales by American to plaintiff. No sales resulted from that visit.

(4) The Neoprene in question was shipped, in accordance with the practice above set forth, from West Virginia to Durkee-Atwood at the latter's place of business in Minnesota. American did not know to what use Durkee-Atwood intended to put the product; it did not know that it would be resold to plaintiff; it did not know that it would be shipped to, or used in, California.

(5) In dealing with Durkee-Atwood, plaintiff did not know where the latter intended to secure the Neoprene. Plaintiff did not discover that the product shipped to it and used by it was manufactured by American until discovery proceedings in the instant case disclosed that information. The amended complaint, attempting to bring in American was filed only after, and as a result of, that knowledge.

■ California jurisdiction over a foreign corporation, under the so-called "long-arm" statute (Code Civ. Proc., § 410.10), depends on the existence of "certain minimum contacts with this state so that the maintenance of the action does not offend traditional notions of fair play and substantial justice." (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.* (1969) *supra,* 276 Cal.App.2d 610, 614.) ■ The extent of those minimum contacts, within the framework of the facts of this case, were recently explored by this court in the *Tiffany* case above cited and, previously by the Supreme Court in *Fisher Governor Co.* v. *Superior Court (Prestwich)* (1959) 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1]. ■ The following language from the *Fisher* opinion is here significant (at p. 225): "Although a foreign corporation may have sufficient contacts with a state to justify an assumption of jurisdiction over it to enforce causes of action having no relation to its activities in that state (*Perkins* v. *Benguet Mining Co.,* 342 U.S. 437, 445-447 [96 L.Ed. 485, 492-493, 72 S.Ct. 413]; *International Shoe Co.* v. *Washington,* 326 U.S. 310, 318 [90 L.Ed. 95, 103, 66 S.Ct. 154, 161 A.L.R. 1057]; *Le Vecke* v. *Griesedieck Western Brewery Co.,* 233 F.2d 772, 777-778; *Koninklijke L. M.* v. *Superior Court,* 107 Cal.App.2d 495, 500-501 [237 P.2d 297]), more contacts are required for the assumption of such extensive jurisdiction than

sales and sales promotion within the state by independent nonexclusive sales representatives. (*Le Vecke* v. *Griesedieck Western Brewery Co., supra,* 233 F.2d 772, 776-777; *W. H. Elliott & Sons Co.* v. *Nuodex Products Co.,* 243 F.2d 116, 122, concurring opinion; *L. D. Reeder Contractors of Arizona* v. *Higgins Industries,* 265 F.2d 768, 779; *Kenny* v. *Alaska Airlines,* 132 F.Supp. 838, 852-854; see *A. G. Bliss Co.* v. *United Carr Fastener Co. of Canada,* 116 F.Supp. 291, 294, aff'd. 213 F.2d 541.) To hold otherwise would subject any corporation that promotes the sales of its goods on a nationwide basis to suit anywhere in the United States without regard to other considerations bearing on 'the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' (*International Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 319; see also, *L. D. Reeder Contractors of Arizona* v. *Higgins Industries, supra,* 265 F.2d 768, 779.) Accordingly, we must look beyond defendant's sales activties in this state to determine whether jurisdiction may constitutionally be assumed."

As we have indicated above, the sales contacts with California were minimal. The goods were not sold to a California purchaser; they were not shipped to California; American did not know that they would be so sold or shipped by its customer; plaintiff in no way relied on American's warranty of quality or on American's business reputation. The contacts in the case at bench were even less than those in *Tiffany* and in *Fisher*; California has no interest in this litigation sufficient to justify service on American.[5]

The order appealed from is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

---

[5]Plaintiff's action against Durkee-Atwood in no way depends on the presence of American. If the allegations of the amended complaint are true, Durkee-Atwood may be liable on its own warranty of quality whether or not it had relied on a similar warranty from American. If any party is really interested in getting American into this lawsuit it would be Durkee-Atwood and that defendant is not seeking so to do.