[No. G040830. Fourth Dist., Div. Three. Feb. 23, 2009.]

LUBERSKI, INC., Plaintiff and Appellant, v.
OLEIFICIO F.LLI AMATO S.R.L., Defendant and Respondent.

## COUNSEL

Law Office of D. Michael Bush and D. Michael Bush for Plaintiff and Appellant.

Crawford & Bangs, William J. Crawford and Michael D. Cramer for Defendant and Respondent.

**OPINION**

**IKOLA, J.**—Plaintiff Luberski, Inc. (Luberski), appeals an order granting defendant Oleificio F.LLI Amato S.R.L.'s (Amato) motion to quash service of summons for lack of personal jurisdiction.[1] (See Code Civ. Proc., § 418.10, subd. (a)(1).)[2] As an Italian olive oil company with limited sales to California customers, Amato averred its contacts with California were insufficient to justify the exercise of personal jurisdiction as a matter of constitutional due process. (See § 410.10.)

We reverse. The court has specific jurisdiction over Amato with regard to this matter because the subject of the dispute is Amato's alleged nondelivery of $406,000 worth of olive oil to Luberski in California.

FACTS

On February 11, 2008, Luberski, an entity operating in California, filed a complaint for breach of written contract, monies had and received, and fraud against Amato, an entity operating in Italy. The complaint alleged the parties agreed via purchase order and written confirmation that Luberski would pay Amato $406,000 for 12,000 cases of olive oil. The contract allegedly obligated Amato to ship the olive oil to Luberski by way of Long Beach, California, with duties and taxes paid by Amato. The complaint alleged Luberski paid $406,000 to Amato, but the promised shipment of olive oil never arrived and Amato did not respond to subsequent written communications inquiring about the promised shipment. The exhibits to the complaint indicate the parties expected a second shipment of olive oil to occur at the same price following satisfactory completion of the first shipment, but the complaint does not allege this second shipment was part of the contract sued upon because payment was only made in the amount of $406,000 (and not $812,000).

Amato specially appeared to contest personal jurisdiction. In support of Amato's motion to quash the summons and complaint, its president attested to the following facts: Amato is a corporation formed under the laws of Italy and located in Partanna, Italy; Amato is in the business of producing olive oil

---

[1] Luberski incorrectly identified itself in the initial complaint as Hidden Villa Ranch Produce, Inc., which is its "doing business as" name. The court subsequently allowed Luberski to amend the complaint to correct this error. Although relevant documentary evidence refers to "Hidden Villa Ranch," we will refer to plaintiff as Luberski throughout this opinion for the sake of simplicity. Amato elected not to file a respondent's brief; its attorneys notified the court that Amato instructed them to take no action regarding this appeal.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

and related products which it sells on a wholesale and retail basis in Italy and to a lesser extent internationally; Amato has sold "some" olive oil to California customers over the years, mainly to two buyers (not including Luberski); Amato provides no services in California; Amato's California sales consist of accepting purchase orders, preparing an invoice, and shipping the products to the closest harbor (either Long Beach or Oakland); Amato has no employees, assets, bank accounts, or offices in California; Amato is a "small company" for which defense of a California action would impose a material burden; Amato "shipped the requested oil over eighteen months ago"; and this order was the first for Luberski, which was introduced to Amato by an existing California buyer. Luberski countered by submitting a declaration which verified the facts alleged in the complaint.

The court found the record supported, for the purposes of the jurisdictional ruling, that Amato "was to deliver $400,000 plus worth of olive oil to the port of Long Beach addressed to the plaintiff, which is a California corporation, and was responsible for the cost of shipping, insurance, and freight." Nevertheless, the court granted the motion to quash service of the summons, ruling neither general nor specific jurisdiction was established. The minute order stated: "General jurisdiction does not exist because defendant's contacts with California are not substantial, continuous, and systematic. Specific jurisdiction does not exist. There is no evidence defendant purposefully and voluntarily directs activities toward California in order to obtain benefit from the state."

## DISCUSSION

■ "California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. [Citation.] A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*).) "When a defendant challenges personal jurisdiction, the plaintiff has the burden to prove, by a preponderance of the evidence, the factual basis for the exercise of jurisdiction." (*Shisler v. Sanfer Sports Cars, Inc.* (2006) 146 Cal.App.4th 1254, 1259 [53 Cal.Rptr.3d 335] (*Shisler*).) If the "jurisdictional facts are undisputed, the question of jurisdiction is a purely legal question and, therefore, is subject to a de novo review." (*Ibid.*)

■ "Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her

contacts in the forum state are 'substantial . . . continuous and systematic.' [Citations.] In such a case, 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' [Citations.] Such a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction. . . . [¶] If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum . . . ." (*Vons, supra,* 14 Cal.4th at pp. 445–446.) "A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citations]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citations]." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 [127 Cal.Rptr.2d 329, 58 P.3d 2].)

Luberski claims the court erred by finding it lacked both general and specific jurisdiction over Amato. We agree with the court that the evidence is insufficient to support a finding of general jurisdiction over Amato. (See *Carretti v. Italpast* (2002) 101 Cal.App.4th 1236, 1243–1246 [125 Cal.Rptr.2d 126] (*Carretti*) [no general jurisdiction over Italian company with no California offices or employees, and a small number of sales to a California buyer who "showed up on its doorstep in Italy"].) The record discloses that Amato's only contacts with California are its history of shipping olive oil to a small number of customers within the state. This does not represent substantial, continuous, and systematic contacts such that Amato could be held to answer to any lawsuit (whether related or unrelated to such sales of olive oil) in California. Thus, we will confine our analysis to the issue of specific jurisdiction.[3]

In applying the three-part test for specific jurisdiction identified above, it is clear this action arises out of an alleged contact with the forum, namely Amato's agreement to ship olive oil to a California company and the alleged nondelivery of such olive oil. (See *As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859, 1871 [58 Cal.Rptr.2d 654] [complaint alleges products sold into California did not include adequate warnings, thus claim

---

[3] Luberski argues the court erred by refusing to allow additional time for Luberski to conduct discovery on jurisdictional issues. Such evidence would presumably relate to the issue of general jurisdiction, as no claim has been made that additional jurisdictional facts need to be ascertained regarding the transaction at issue. Because we decide in Luberski's favor on the issue of specific jurisdiction, we need not address whether the court should have allowed additional time for discovery before granting Amato's motion to quash. Similarly, we deny as moot Luberski's motion to submit additional evidence relating to alleged distribution of Amato's olive oil in the United States.

related to contacts with state].) Amato concedes this portion of the analysis by contending it complied with the contract by "shipp[ing] the requested olive oil . . . ."

Thus, the questions presented are whether Amato—by contracting with a California company for the sale of $406,000 in olive oil and shipping those goods to Long Beach harbor (or failing to ship such goods)—purposefully availed itself of the benefits of the forum and, if so, whether it comports with justice to force Amato to litigate this dispute in California. Before analyzing applicable case law, it is useful to recall the undisputed relevant facts: Luberski initiated the order from California (not by travelling to Italy); the parties attempted to set the terms of the contract through the exchange (by facsimile) of a purchase order, a confirmation, and additional correspondence (but no single formalized contract); the sale at issue is $406,000 (in American currency) worth of olive oil to be delivered by an Italian seller to a California buyer; the terms of shipment are that the Italian seller would pay for freight and insurance to Long Beach; and the Italian seller had no direct presence in California (whether personnel, advertisements, or otherwise) in relation to the transaction and nothing further to do with the jurisdiction other than shipping its goods there.

■ "[T]he criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 319 [90 L.Ed. 95, 66 S.Ct. 154].) No California case replicates the fact pattern before us, but several are close enough to aid our analysis. (See *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664 [190 Cal.Rptr. 175, 660 P.2d 399] (*Secrest*); *Shisler, supra*, 146 Cal.App.4th at pp. 1260–1262; *Carretti, supra*, 101 Cal.App.4th at pp. 1246–1255; *Bridgestone Corp. v. Superior Court* (2002) 99 Cal.App.4th 767 [121 Cal.Rptr.2d 673] (*Bridgestone*).)

In *Secrest, supra*, 33 Cal.3d 664, an injured employee brought a tort suit in a California court against the Virginia manufacturer of a machine used at his employer's factory. The manufacturer did not maintain any offices, or have any agents, representatives, employees, or property in California. (*Id.* at p. 667.) The president of the employer had heard about the manufacturer through word of mouth, sent a representative to view similar machines in operation at another company's plant in Alameda, California, then sent the same individual to Virginia to negotiate the purchase of the machine. (*Ibid.*) After the Virginia visit, the president continued negotiations from California

by phone and mail; ultimately, an agreement was reached, and the president mailed a purchase order for the machine at the price of $115,116. (*Id.* at pp. 667–668.) The employer took delivery of the machine in Virginia, although the contract conditioned acceptance on satisfactory performance in California. (*Id.* at p. 668.) The employer and manufacturer did not have a formal maintenance agreement, but the manufacturer in fact provided such assistance on request—mainly advice but also by sending an employee to assist in the installation of the machine. (*Ibid.*) The manufacturer twice sent advertisements to the employer following the purchase of the machine. (*Ibid.*)

The *Secrest* court held the manufacturer had purposefully availed itself of the California forum and it was fair and reasonable for California courts to exercise specific jurisdiction. (*Secrest, supra*, 33 Cal.3d at pp. 670–673.) Citing the actions by the manufacturer discussed above, our high court explained, "All of these acts were designed to consummate a business arrangement in which [manufacturer] would profit financially by selling its product for use in California. Although [employer] initially approached [manufacturer], the sale was a deliberate act by [manufacturer] which generated substantial gross income and constituted economic activity within California 'as a matter of commercial actuality.' " (*Id.* at p. 671.) *Secrest* also noted the continuing nature of the transaction; the manufacturer continued to provide service assistance and sent advertisements to the employer—it was not merely an isolated transaction. (*Id.* at p. 671.) In supporting the fairness of finding jurisdiction, the court mentioned the unfairness of forcing the employee to sue in Virginia, the location of evidence in California (the machine and witnesses), and the lack of a substantial showing by the manufacturer that specific burdens (rather than simply the cost and inconvenience of travel) would be imposed on it by litigating the case in California. (*Id.* at pp. 672–673.)

In *Shisler, supra*, 146 Cal.App.4th 1254, an individual residing in California purchased a used automobile from a Florida corporation with its principal place of business in Miami. The seller had never owned or leased property in California, had never "directly advertised" in California, and had never "intentionally targeted any California resident as a potential buyer or seller of an automobile." (*Id.* at p. 1257.) Over 32 years and nearly 45,000 sales, the seller sold fewer than 10 autos to California residents. (*Ibid.*) The buyer saw a used car on the seller's Web site; the Web site indicated the seller would ship vehicles " 'worldwide.' " (*Ibid.*) The buyer and seller negotiated a purchase of the car over the phone and through the mail; the contract for sale was prepared in Florida and mailed to the plaintiff in California. (*Id.* at pp. 1257–1258.) The buyer selected a shipping company from a list provided by the seller. (*Id.* at p. 1258.) It was "undisputed that title to the vehicle passed to plaintiff when the shipper took possession of the vehicle in Florida." (*Ibid.*) The buyer, dissatisfied with the car upon receipt, sued the

seller in California; the seller moved to quash service of the summons and the trial court granted the motion. (*Ibid.*)

The *Shisler* court affirmed the trial court, finding it lacked both general and specific jurisdiction over the seller. In denying specific jurisdiction, the court found the seller did not purposefully avail itself of the benefits of the California forum merely by posting its inventory on its Web site or by negotiating a sale with the buyer after the buyer initiated the sales process. (*Shisler, supra,* 146 Cal.App.4th at pp. 1260–1262.) The court cited a number of factors leading to this conclusion: the seller's Web site was purely informational and not interactive; the seller did not intentionally target California consumers; this was a "one-time transaction" with the buyer; and there was no further contact (besides the lawsuit) with the buyer following the delivery of the car. (*Ibid.*)

In *Carretti, supra,* 101 Cal.App.4th 1236, a California restaurant employee sued the individual (Carretti) who had sold to his employer a pasta making machine which cut off a portion of his arm. Carretti, also a California resident, acquired the pasta machine from Italpast, an Italian company, which he sued in a cross-complaint. (*Id.* at pp. 1239–1240.) Italpast had no offices or employees in the United States, and it did not market or advertise its products in the United States (but Italpast did send product information upon request). (*Id.* at p. 1240.) Carretti resided in Orange County, and had sold more than 20 Italpast machines across the United States and in other countries. (*Ibid.*) At the time of the lawsuit, Carretti had travelled to Italy on regular occasions over the previous seven years to purchase his wares. (*Ibid.*) Each time Carretti purchased goods from Italpast, Italpast would deliver the goods to a Milan shipper selected by Carretti, and Carretti made all shipping arrangements. (*Ibid.*) The sales documents prepared by Italpast indicated it was aware Carretti was a California resident, as it included his address on the documents. (*Ibid.*) Italpast provided replacement parts and price lists to Carretti at his request; further, Carretti facilitated the provision of replacement parts by Italpast and even arranged two visits by Italpast employees to the United States to meet with a customer. (*Id.* at p. 1241.)

The *Carretti* court found Italpast had not purposefully availed itself of the forum, declining to find "random sales in Italy to a distributor who happens to have an office in California but may resell its products anywhere is tantamount to an effort to serve the market in the state." (*Carretti, supra,* 101 Cal.App.4th at p. 1253.) The court classified the case as one in which Italpast merely placed its goods into the "stream of commerce" without the expectation that any such products would end up in California (*id.* at pp. 1246–1247), and any sales to California customers "took place through the unilateral activity of Carretti." (*Id.* at p. 1254.) The court explained it was

unnecessary to examine fairness considerations in light of its conclusion on purposeful availment, but it noted "Carretti makes a practice of traveling to Italy to do business and was the one who got Italpast involved. We pay heed to the admonition of the United States Supreme Court . . . : ' "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." [Citations.]' All things considered, it is not unreasonable for Carretti to have to pursue redress in Italy, where he purchased the allegedly defective machine." (*Id.* at p. 1255.)

In *Bridgestone, supra*, 99 Cal.App.4th 767, a plaintiff sued various parties for damages arising from the explosion of a trailer tire. Several of the defendants filed a cross-complaint against Bridgestone, the Japanese manufacturer of the tire at issue. (*Id.* at p. 771.) Bridgestone moved to quash the summons, arguing it operated in Japan, had no presence in California, and did not advertise or market its products in California. (*Id.* at pp. 771–772.) Bridgestone/Firestone, Inc. (Firestone), named as a defendant, distributed Bridgestone tires in California (and elsewhere in the United States). (*Ibid.*) Firestone, a wholly owned subsidiary of Bridgestone, had a distribution center in California that received at least 25,000 tires per month manufactured by Bridgestone, and distributed those tires to a network of approximately 900 dealers, one-half of whom were in California. (*Id.* at p. 772.)

The *Bridgestone* court affirmed the trial court in holding that Bridgestone had purposefully availed itself of the California forum and that it was fair and reasonable for California to exercise jurisdiction over Bridgestone in the case before it. (*Bridgestone, supra*, 99 Cal.App.4th at pp. 774–779.) "The United States Supreme Court has explained that placing goods in the stream of commerce with the expectation that they will be purchased by consumers in the forum state indicates an intention to serve that market and constitutes purposeful availment [citations] as long as the conduct creates a ' "substantial connection" ' with the forum state [citation]." (*Id.* at pp. 774–775.) This substantial connection cannot be created through random, fortuitous, or attenuated contacts, or based on the unilateral activity of another person. (*Id.* at p. 775.) But the court concluded Bridgestone had purposefully availed itself of the forum because of the "substantial" income derived from its California sales: "a manufacturer's placement of goods in the stream of commerce with the expectation that they will be purchased or used by consumers in California indicates an intention to serve the California market 'directly or indirectly' [citation] and constitutes purposeful availment if the income earned by the manufacturer from sale or use of its product in California is substantial." (*Id.* at p. 777.) Moreover, exercising jurisdiction was fair under the circumstances because all the parties suing Bridgestone were California residents and judicial efficiency was best served by litigating the entire case together. (*Id.* at p. 779.)

■ Turning to the case before us, we think Amato purposefully availed itself of the California forum. The negotiations were conducted and completed in Italy *and* California; Luberski sought out Amato, but the contract negotiations were conducted via long-distance communications with the implicit understanding that the goods were only useful to Luberski if they were delivered to California. Unlike *Carretti, supra*, 101 Cal.App.4th 1236, delivery was not made in Italy. Amato maintained responsibility for the goods until they arrived in California. Thus, Amato had the expectation that the goods it was placing in interstate commerce would be utilized in California. Furthermore, the size of the contemplated transaction—more than $400,000 for the first shipment and another similarly sized shipment contemplated—is "substantial" by almost any definition pertaining to a sale of goods contract. (*Secrest, supra*, 33 Cal.3d at pp. 670–671; *Bridgestone, supra*, 99 Cal.App.4th at p. 777.)

The dispute at issue does not represent a commercially irrelevant shipment of goods, or goods that fortuitously arrived in California. This is not a case of California tourists bringing olive oil home from Italy, or a third party distributor shipping Amato olive oil to California without the specific knowledge of Amato. Amato received the purchase order and was presented with the option of completing a substantial transaction with a California entity in California, which required delivery of goods to California. Amato opted to accept this order. The totality of facts supports a finding that Amato purposefully availed itself of the benefits of the forum.

■ With those same facts in mind, it is only fair to provide Luberski with the opportunity to prove its allegations in the forum where it alleges the goods were not delivered (and where Amato claims they were delivered). California courts have a strong interest in enforcing contracts providing for performance within the state. And, if it is true Amato successfully shipped the order to Long Beach, it will be easier to bring together the evidence of what happened to the purportedly missing olive oil in California. Amato will no doubt be inconvenienced by the commencement of a lawsuit in California rather than in Italy to resolve this dispute. But this fact on its own does not outweigh the interest of Luberski and the California courts in resolving the dispute. Finally, it is not unreasonable to expect a seller of goods to select an appropriate forum in a written contract before shipping $406,000 worth of goods into a foreign jurisdiction. The flip side to this argument, of course, is that Luberski is equally at fault for not obtaining written agreement on an appropriate forum to resolve any disputes arising from the sale of goods. Nevertheless, Amato's failure to concern itself with the issue of selecting an appropriate forum vitiates any concern that might arise over the fairness of causing it to face suit in California.

## DISPOSITION

The order quashing service of summons is reversed. Luberski's motion for admission of additional evidence is denied. Luberski is awarded its costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.